2004 SD 99

**Mary Ann HAYNES, Claimant and Appellant,**

v.

**McKie FORD, Employer and Appellee,**

and

**Mid-Century Insurance Company, Insurer and Appellee.**

**No. 22749.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 27, 2003.

Reassigned March 30, 2004.

Decided Aug. 25, 2004.

Michael J. Simpson of Julius and Simpson Rapid City, SD, for claimant and appellant.

Craig A. Pfeifle, J. Ashley Parr of Lynn, Jackson, Shultz & Lebrun, Rapid City, SD, for employer, insurer and appellees.

ZINTER, Justice (on reassignment).

[¶ 1.] Mary Haynes appeals from a circuit court decision overruling a Department of Labor ruling that Haynes was permanently and totally disabled and entitled to workers' compensation benefits. We affirm the circuit court.

### Facts and Procedural History

[¶ 2.] Mary Haynes was diagnosed with mild mental retardation predating this case. She worked at several jobs after finishing high school, but they were all short-lived. She was unemployed from October 1995 to March 1997, but then

started a program at the Black Hills Workshop, a non-profit organization that provides employment service to adults with disabilities. There, Haynes was given daily assistance and job skills. She was also "placed" at the Comfort Inn as a housekeeper. In that employment, she was given a substandard work evaluation, but was "getting close to the standard for the average worker." In October 1997, Haynes was placed at McKie Ford as a cleaning person. In March 1998, she asked that Black Hills Workshop's services be terminated and she be allowed to continue her job at McKie Ford "on her own."

[¶ 3.] On March 5, 1999, Haynes slipped and fell while working at McKie Ford. She was treated in the emergency room by Dr. Bryan Den Hartog. He diagnosed Haynes with an acute low back strain. He took Haynes off work for two weeks, and then returned her to work on a part-time basis.

[¶ 4.] Haynes testified that she continued to have pain in her back and maintained that the pain did not exist prior to the slip and fall. However, Dr. Den Hartog noted that Haynes had good range of motion in her back and her neurovascular examination and motor function appeared intact. Dr. Den Hartog further noted that Haynes was not doing the back exercises she had been instructed to do. Because of Haynes's continued complaints of pain and the absence of abnormalities in his evaluations, Dr. Den Hartog ordered an MRI to rule out any objective injury. The results of the MRI were "essentially normal." Dr. Den Hartog thereafter noted that "most of her complaints [were] subjective. I cannot find any objective signs on her examination today of any significant nerve impingement or mechanical back pain." Moreover, by the summer of 1999, Dr. Den Hartog returned Haynes to working full-time.

[¶ 5.] In October 1999, Haynes was terminated from McKie Ford for reasons unrelated to the work injury. Haynes next found a job at a Super 8 motel in December 1999. She started working part-time in the laundry department, and this position increased to full-time employment in the summer months.

[¶ 6.] At the request of the workers' compensation insurer, Haynes was examined by Dr. Brett Lawlor. Dr. Lawlor saw Haynes five times from June 1999 until March 2000. Neither a MRI, EMG, nor an x-ray could confirm a specific source of pain. However, Dr. Lawlor diagnosed mechanical low back pain, a designation that he described as a catch-all diagnosis for patients who do not have a specifically identifiable cause of back pain. He stated that Haynes's subjective complaints were the only evidence of a permanent injury. Dr. Lawlor also noted that Haynes had not been fully compliant with her physical therapy. Therefore, although Dr. Lawlor indicated that the slip-and-fall was a major contributing cause of Haynes's initial mechanical back pain, he opined that the work injury was not a major contributing cause of any permanent impairment, and he returned her to work without restrictions. Although Dr. Lawlor also testified that it was not his opinion Haynes was malingering, he opined that Haynes had a zero percent impairment rating.

[¶ 7.] In March 2000, Haynes was still complaining of back pain and right leg numbness to Dr. Lawlor. Dr. Lawlor found her complaints to be inconsistent and further found that when Haynes was casually observed, she had greater flexion than that demonstrated when she was being directly observed. Dr. Lawlor again found that Haynes's test results were normal.

[¶ 8.] Haynes next sought medical care from Nancy McPherson, a physician's as-

sistant. McPherson treated Haynes on a number of occasions for a variety of conditions including anxiety and depression. McPherson saw Haynes for back pain on three occasions from June through September of 2000. On the September visit, McPherson limited Haynes to working twenty hours per week and four hours a day. However, McPherson testified that this restriction was temporary, and that Haynes was to see her again in a few weeks. Haynes did not return to McPherson.

[¶ 9.] In November 2000, Haynes sought treatment from Dr. Gregory Lowenberg, a chiropractor. Dr. Lowenberg treated Haynes from November 2000 through March 2001. He found "tightness or spasm" in Haynes's mid-back down through her buttocks. Dr. Lowenberg testified that his findings of spasms were objective findings. He also found Haynes's spine had restricted motion. Although Dr. Lowenberg believed that Haynes had back pain, he conceded that he was unable to express an opinion that Haynes was permanently disabled as a result of the slip-and-fall. He was unable to express that opinion because Haynes never followed through on the treatment plan he prescribed for her to get back to work.

[¶ 10.] A number of other factors impacted Haynes's ability to work. In October 2000, Haynes was the victim of domestic abuse, and her husband was jailed for the offense. Additionally, in early 2001, Haynes was admitted to a psychiatric facility on two occasions.

[¶ 11.] Consequently, evidence was presented at hearing from Dr. Charles Lord, a psychiatrist. Dr. Lord had last seen Haynes in October 1998, prior to her work injury. After reviewing her post injury medical history and his prior involvement with Haynes, he opined that she had a tendency to somatize, meaning she took psychological discomfort and put it into a target organ. He explained this condition by noting that the medical evidence reflected no objective physical findings that caused the ongoing problem. He ultimately opined that Haynes's mental condition would have made her uncompetitive in the labor market with or without the injury at McKie Ford. With respect to the issue of that injury being a major contributing cause of a permanent and total disability, he specifically deferred to Dr. Lawlor, but declined to defer to Dr. Lowenberg or McPherson.

[¶ 12.] At the time of the hearing, Haynes worked at the Clarkson nursing home. In that job, she sat at a table folding laundry approximately twenty to twenty-five hours per week. Occasionally, Haynes worked up to thirty to thirty-five hours per week.

[¶ 13.] After a hearing, the Department awarded permanent and total disability benefits. The circuit court reversed. Haynes now appeals, raising the following issues:

1. Whether the circuit court erred in determining that Haynes's work injury was not a major contributing cause of her current disability.

2. Whether the circuit court erred in determining that Haynes was not permanently and totally disabled pursuant to the odd-lot doctrine.

### Analysis and Decision

[¶ 14.] In workers' compensation cases:

Our standard of review ... is controlled by SDCL 1–26–37. "Under SDCL 1–26–37, when the issue is a question of fact then the clearly erroneous standard is applied to the agency's findings; however, when the issue is a question of law,

the actions of the agency are fully reviewable." We will reverse only when, after careful review, we are firmly convinced a mistake has been made.... "The standard of review in an appeal to the Supreme Court from a trial court's appellate review of an administrative decision is de novo: unaided by any presumption that the trial court is correct." "Whether a claimant makes a prima facie case to establish odd-lot total disability inclusion is a question of fact." *Lagge v. Corsica Co-op*, 2004 SD 32, ¶ 14, 677 N.W.2d 569, 573 (internal citations omitted). However, when an agency makes factual determinations on the basis of documentary evidence, such as a deposition, the matter is reviewed de novo. *Watertown Coop. Elevator Ass'n. v. SD Dept. of Revenue*, 2001 SD 56, ¶ 10, 627 N.W.2d 167, 171 (citations omitted).

1. **Whether Department erred in determining that Haynes's work injury was a major contributing cause of her current disability.**

[¶ 15.] Haynes claims permanent, total disability under the odd-lot doctrine. Under the odd-lot doctrine, a workers' compensation claimant must show that her physical condition, in combination with her age, training, and experience, and the type of work available in her community, causes her to be unable to secure anything more than sporadic employment resulting in insubstantial income. *Enger v. FMC*, 1997 SD 70, ¶ 21, 565 N.W.2d 79, 85 (quoting *Spitzack v. Berg Corp.*, 532 N.W.2d 72, 75 (S.D.1995)). This showing can be made by establishing either that: "1) she is obviously unemployable; or 2) suitable employment is unavailable." *Id.* (citing *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 231–32 (S.D.1994)).

[¶ 16.] Haynes testified that she had experienced back pain continuously since the date of her work injury. She also testified that prior to that work injury, she did not have any significant difficulty with her back. Although she worked full-time at McKie after her injury, she further testified that she sought medical assistance for treatment of her pain after the incident. The Department found her credible, (however, *see infra* note 2), and *based on medical depositions*, further found that her injury was a major contributing cause of her current disability. Therefore, the Department awarded permanent total disability benefits.

[¶ 17.] SDCL 62–1–1(7)(a) provides that "[n]o injury is compensable unless the employment or employment related activities are a major contributing cause of the *condition* complained of[.]" (Emphasis added.) " 'Condition' ... is the *loss produced* by some injury; i.e., it is the *result* rather than the cause. The word 'condition' means 'state of being.' " *Steinberg v. SD Dept. of Military and Veterans Affairs*, 2000 SD 36, ¶ 10, 607 N.W.2d 596, 600 (citations omitted) (emphasis added). Accordingly, even though there is no medical dispute that Haynes suffered an *initial* work-related *injury*, that injury does not automatically establish entitlement to benefits for her current claimed condition. Haynes must have also established that this injury became a major contributing cause of her *current* claimed *condition*. To decide that question, we determine whether Haynes produced sufficient medical testimony to establish that the slip-and-fall was a major contributing cause of her current, claimed inability to work full-time.

[¶ 18.] That medical testimony was presented through the depositions of Dr. Lord, a psychiatrist; Dr. Lawlor, a board-certified specialist in physical medicine and rehabilitation; Dr. Lowenberg, a chiropractor; and Ms. McPherson, a physician's assistant. As an overview, we observe

that both Dr. Lord and Dr. Lawlor supported employer's position that the slip-and-fall was not a major contributing cause of Haynes's current condition. On the other hand, Dr. Lowenberg and physician's assistant McPherson supported Haynes's claim.

[¶ 19.] Our de novo review of these conflicting medical depositions leads us to agree with the circuit court that the opinions of the medical doctors are more persuasive in this case than the opinions of the chiropractor and physician's assistant. As the circuit court noted, the former opinions warrant greater weight due to "Dr. Lawlor's and Dr. Lord's specialized training and superior experience in understanding the medical and psychiatric factual information upon which the answers to those issues depended." Moreover, the cross examinations of Dr. Lowenberg and McPherson reflect that their testimony did not support a claim for *permanent total* disability. Furthermore, even if one only relied upon their direct examinations, their opinions are much less persuasive than the testimony of the psychiatric physician and the specialist in physical and rehabilitation medicine.

[¶ 20.] These conclusions are confirmed by examining the foundation for the testimony of each witness. First, as a result of Haynes's psychological and psychiatric condition, Dr. Lord testified that Haynes's fall at work was not a major contributing cause of any current claim of permanent inability to hold substantial and gainful employment. Unlike the other medical experts, Dr. Lord's testimony was based on all of Haynes's medical records, specifically including the pre-injury records in her

Social Security disability file that reflected back pain as early as 1992. His opinion was also based upon the lack of credible medical evidence of a continuing injury.[1] Most significantly, only Dr. Lord was competent to assess the impact of Haynes's mental condition on this claim. On that subject, he observed that it was her mental condition, rather than her work injury, that made her uncompetitive in the labor market. In fact, Dr. Lord observed that Haynes was never really capable of functioning in a competitive labor market. Even after cross-examination on these points, he held to his opinion that "[t]he problem with her husband, the physical abuse, the alcohol problems, the lack of sticking with the psychiatric treatment in one particular place and not following through, her personality problems, her impulsivity and her lack of follow through" are more significant issues for her than the back injury. Of course, none of these problems were caused by, or were related to, her fall at McKie Ford. Furthermore, Dr. Lord's opinions were not refuted by any other medical expert.

[¶ 21.] Although Dr. Lord had not treated Haynes since 1998 and was not aware of Dr. Lowenberg's discovery of "objective muscle tightness," these points did not change Dr. Lord's psychiatric opinions when they were called to his attention. Dr. Lord explained that he did not rely upon Dr. Lowenberg's "objective" notation of muscle spasms because he opined that it was very common for such patients who somatize to experience the muscle tightness observed by Dr. Lowenberg. Furthermore, even though Dr. Lord con-

---

1. The foundation for this testimony is amply supported by the record. Dr. Den Hartog indicated that medical testing (MRI testing) was "essentially normal" with no signs of any objective problem. Moreover, notwithstanding her subjective complaints of pain, Dr. Den Hartog released Haynes to full-time work on June 2, 1999. Furthermore, although Haynes continued to complain of back pain, she returned to full-time work without any physical difficulties in performing her job duties.

ceded that he did not treat Haynes for her low back pain, he maintained his psychiatric opinion, he deferred to Dr. Lawlor on the physical aspects of the causation issue, and he specifically declined to defer to the two other experts.

[¶ 22.] Dr. Lawlor specialized in physical medicine and rehabilitation, particularly specializing in the non-surgical treatment of neurological and musculoskeletal injuries and diseases, with a major emphasis on neck and back pain. Using that specialty, Dr. Lawlor examined Haynes several times. His examinations revealed that the slip-and-fall was not a major contributing cause of her current condition. Instead, Dr. Lawlor indicated that the fall was not permanently disabling and that Haynes was capable of full-time work without restriction. Dr. Lawlor specifically noted that Haynes had a zero percent permanent impairment rating and no permanent injury as a result of the fall at McKie Ford.

[¶ 23.] There is ample evidence in the record to support Dr. Lawlor's opinion. First, Dr. Lawlor noted that Haynes's reports of pain were inconsistent with all of the objective medical evidence. He indicated that "some other factor besides a physical factor" was contributing to her complaints of pain. This other factor was fully explained by the psychiatric opinion of Dr. Lord.

[¶ 24.] Second, Dr. Lawlor observed that Haynes was "not fully compliant" in her physical therapy, nor did she attend all of her appointments. Moreover, when she did participate in physical therapy, she voiced complaints that were inconsistent with her known physical capabilities. For example, "at times [Haynes said] she couldn't bend forward when asked to do so, but when casually observed would be able to bend forward with seeming ease."

[¶ 25.] Third, Dr. Lawlor was the only practitioner that ordered a neurological study of Haynes. The study used was considered the "gold standard" for determining neurological or myopathic injury, but that testing revealed no abnormalities.

[¶ 26.] Finally, Haynes essentially confirmed Dr. Lawlor's opinion. She did so by demonstrating her ability to work full-time at McKie Ford after the injury and at the Super 8 Motel when her hours were increased to full-time during the tourist season.

[¶ 27.] Consequently, Dr. Lawlor concluded that the slip-and-fall was not a major contributing cause of Haynes's condition. In his view, Haynes's complaints of pain were simply inconsistent with objective medical evidence. In fact, he specifically noted that Haynes's complaint of decreased sensation of her entire right-lower extremity was medically impossible. Therefore, he opined that under the AMA guidelines, Haynes had no permanent impairment, and she could return to work without any restrictions.

[¶ 28.] The Department, however, declined to rely upon these physicians, and instead relied upon the deposition of Dr. Lowenberg. However, the record is clear that, while Dr. Lowenberg believed she had pain, he conceded that he was unable to express an opinion that Haynes *was permanently disabled due to the* slip-and-fall. He was unable to express that requisite opinion because Haynes never followed through on the treatment plan Dr. Lowenberg prescribed for her to get back to work. He specifically conceded:

> **Question:** Now certainly one of the objects of the treatment plan that you outlined was to attempt to restore this woman to, among other things, the ability to work a 40–hour week; isn't that correct?
>
> **Answer:** That would be a goal.

**Question:** All right. And we'll never know if that would have been successful because she didn't follow the program; isn't that correct?

**Answer:** Well, there's room for interpretation with all that with work. I mean she followed through with a full month and didn't have a lot of increase or benefit. So with a full month of care, we weren't lending [sic] to think that she was going to restore full health. *So I can't say, you know, would have she [sic] gotten completely better and worked 40 hours? There's no way I could state that. If she would have followed through with the proper treatment plan, I would have been able to state on more definitive basis where we were at there.*

**Question:** Sure. *But the reason we don't have the answer to that question is because she did not follow through on the treatment plan; correct?*

**Answer:** *Correct.*

Consequently, Dr. Lowenberg did not express the requisite opinion on causation of the claimed permanent, total disability. .

[¶ 29.] It must also be noted that to the extent that Dr. Lowenberg gave an opinion, it was based on an inaccurate work tolerance history and an incomplete understanding of Haynes's work restriction. He incorrectly understood that McPherson's restriction was permanent and that "all the doctors tried to get her to go from more into 8 hours, and each time it caused problems." He also incorrectly believed that she was unable to return to full-time work after the 1999 injury. In point of fact, she did return to work, and Dr. Lawlor did not limit her to part-time work efforts. Additionally, even if he had, Haynes demonstrated an ability to work full-time at two different jobs. Dr. Lowenberg failed to consider these facts in reaching his opinion. We therefore reiterate that "[t]he value of the opinion of an expert witness is no better than the facts upon which it is based. It cannot rise above its foundation and proves nothing if its factual basis is not true." *Wiedmann v. Merillat Indus.,* 2001 SD 23, ¶ 17, 623 N.W.2d 43, 47–48 (citing *Johnson v. Albertson's,* 2000 SD 47, ¶ 25, 610 N.W.2d 449, 455).

[¶ 30.] The Department's reliance on the physician's assistant is even more suspect. First, it is significant that Haynes did not even complain of back pain on her first visit to McPherson. Therefore, it is not surprising that, after Haynes's first and second visits, McPherson noted no correlation between the work injury and Haynes's claims of pain. Second, and more importantly, McPherson did not attempt to give the *permanent* disability opinion that is necessary to sustain Haynes's claim here. McPherson testified that she only gave Haynes a *temporary* work restriction of twenty hours per week. McPherson indicated that she expressed no opinion on the permanency of that work restriction because again, Haynes did not follow up or carry through with her medical plan regarding her complaints of pain. Therefore, McPherson's deposition also fails to establish that the slip-and-fall was a major contributing cause of Haynes's current claim of *permanent* and *total* disability.

[¶ 31.] In the final analysis, Dr. Lawlor, the physician who was most qualified and most experienced with Haynes's problems, concluded that she suffered no permanent and totally disabling condition as a result of this relatively minor injury. Dr. Lord supplied the psychiatric/psychological explanation for the lack of medical evidence supporting Haynes's problems: Haynes's pain was caused by somatization and related mental health and social problems, rather than any physical injury at

McKie Ford.[2] Finally, Dr. Lord confirmed that Dr. Lawlor's opinion should be used on the mechanical aspects of the injury and any resulting disability. These medical opinions clearly outweighed the foundationally flawed testimony of Dr. Lowenberg and McPherson.

[¶ 32.] Because a preponderance of the medical testimony established that the fall was not a major contributing cause of Haynes's current claimed condition, the circuit court's denial of worker's compensation benefits is affirmed.

[¶ 33.] Because of our holding in Issue 1, we need not reach Issue 2.

[¶ 34.] Affirmed.

[¶ 35.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 36.] TICE, Circuit Court Judge, dissents.

[¶ 37.] TICE, Circuit Court Judge, sitting for SABERS, Justice, disqualified.

TICE, Circuit Judge (dissenting).

[¶ 38.] I respectfully dissent.

[¶ 39.] Under the facts of this case Claimant suffered an injury to her back while working. There is no question by anyone who testified that the injury she suffered at the time of the fall caused her to have a back injury at that time. Further, there is no evidence of significant back injuries of any consistent nature prior to this work-related accident. Claimant testified that she had experienced back pain continuously since the date of her work injury which impaired her work ability. She stated that prior to the injury she did not have any significant difficulty with her back. Because Claimant testified in front of the Department of Labor's Administrative Law Judge (ALJ), we must consider the ALJ's view of Claimant's testimony under a clearly erroneous standard. The most significant finding of the ALJ is that Claimant was credible. More specifically, the ALJ stated:

Claimant credibly testified that she has suffered from constant low back pain since the date of her injury.

Claimant's testimony regarding her back pain was supported by her medical providers.

Claimant was a credible witness and her testimony is accepted. This is also based on the opportunity to observe Claimant's demeanor at the hearing.

[¶ 40.] After the accident, when Claimant worked full-time at McKie, she continued experiencing pain. She testified that the pain was further aggravated during this time. She testified that her back condition has affected many activities she

---

2. The dissent and the hearing examiner place too much emphasis on the wrong question. They primarily focus on whether Haynes was credible in her complaints of *back pain*. However, there is no dispute that Haynes suffers from back pain. The dispositive questions are (1) whether Haynes's *current* back pain was caused by the McKie Ford slip-and-fall, and (2) if it was, whether that fall (the injury) has become a major contributing cause of her current claimed "condition"; i.e., her claimed, permanent inability to work at any employment for forty hours per week. To recover permanent total disability, Haynes had the burden of answering both questions in the affirmative. However, on these questions, both physicians testified that Haynes's fall at work was not a cause of her *current condition*, and the opposing testimony of the chiropractor and nurse are insufficient. Moreover, even if the fall at work contributed to Haynes's current condition, her only expert testimony (the chiropractor and physician's assistant) failed to establish a *permanent total* inability to work full-time. Both witnesses conceded an inability to express a *permanent total* disability opinion. Consequently, Haynes failed to establish that the fall was a major contributing cause of her claimed, *permanent condition*.

used to do prior to the work injury and she has had difficulty sleeping since she fell. She has seen doctors and physical therapists many times since the incident for treatment of the pain. She has never wavered from her complaints of pain. One cannot say affirmatively that the ALJ was clearly erroneous in its belief that Haynes was credible. Additionally, she was found to be credible by Physician's Assistant McPherson and Chiropractor Dr. Lowenberg. Though not questioning her credibility, Dr. Lord expressed a belief that the pain she experienced was caused by a somatic psychological condition. He based this on his belief that the medical records revealed no objective indication of permanent injury. However, prior to his testimony, he failed to review Dr. Lowenberg's records, which support objective findings of pain. Furthermore, Dr. Lord had not seen the Claimant since before the work injury.

[¶ 41.] The ALJ also specifically found Claimant's testimony was supported by her medical providers. There was medical testimony that Claimant's injuries and pain were, and continue to be, caused by the slip and fall at work. Both McPherson and Dr. Lowenberg opined that Claimant's pain was caused by her slip and fall. McPherson stated that in the course of the ten months that she treated Claimant she never had any doubts about Claimant's credibility with regard to her back pain. Dr. Lowenberg, Claimant's chiropractor, found consistent tightness or muscle spasm in Claimant's back. He performed several tests and stated that the results of such tests were objective findings consistent with Claimant's subjective complaints. Dr. Lowenberg gave a professional opinion that Claimant should be permanently limited to part-time work and that the slip and fall injury was a major contributing cause of the condition for which he treated her. Though he felt he could have been more

definitive had she completed a recommended treatment program, that did not diminish his belief of the permanent nature of her discomfort. Indeed, Dr. Lord stated that it was consistent with somaticization for one to not appear to improve or follow through with treatment. Although Dr. Lord did not give credence to Dr. Lowenberg, it is clear that the spasms, as testified to by Dr. Lowenberg, could be deemed to be objective signs of a permanent injury. Additionally, one could question the necessity of finding an objective basis for the pain. Dr. Lawlor, Respondent's own expert who examined the patient on several occasions, acknowledged that out of 100 people he sees with lower back problems, 50 of those people do not have an objective indicator as to the specific source of their pain.

[¶ 42.] Respondent tries to link Claimants personal life and psychological problems to Claimants back pain. However, evidence by Claimants social worker, Mike Sprung, contradicts Respondents argument. Sprung testified that Claimant experienced marital difficulties and depression even before the work injury, yet, Claimant was able to work on a full-time basis without experiencing back pain despite her psychological condition. It was only after the injury that her work was limited. Respondents psychological expert, Dr. Lord, had seen Claimant for her psychological problems prior to her work incident. It is not insignificant that at the time Dr. Lord initially saw her Claimant was continually working full-time. It was only since the work injury that Claimant has had back pain and difficulty working full-time.

[¶ 43.] Both Dr. Den Hartog and Dr. Lawlor diagnosed Claimant with acute (or mechanical) low back strain. While Dr. Lawlor did not indicate that permanent back pain was caused by the work injury,

he did say that the initial mechanical back pain was a major contributing cause of Claimants injury. Importantly, Dr. Lawlor *did not see Haynes after March 2000* and to a degree *deferred to Dr. Lowenberg and PA McPherson as to their assessment after this time.* It is clear that McPherson and Dr. Lowenberg found the injury was a major contributing cause of her permanent injury.

[¶ 44.] Perhaps of major significance is the condition of somaticization which Claimant unquestionably suffered from. If one would not accept that the ALJ could find that the spasms provided objective evidence of a permanent injury from the fall, he could nonetheless find that Claimants experiencing of pain was a direct result of the work injury which, when taken in context with her somaticization, was permanent. SDCL 62–1–1(7)(b) states:

> If the injury combines with a preexisting disease or condition to cause or prolong disability, impairment, or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains a

major contributing cause of the disability, impairment, or need for treatment.

If the accident was a catalyst to a somatic person experiencing pain on a permanent basis, and the accident remains a major contributing cause of the disability, then one would be covered under workers compensation.

[¶ 45.] On balance, I would agree with the majority that the expertise and training that Dr. Lawler had was considerably greater than that of the other witnesses who testified by deposition in this matter. Nonetheless, we cannot disregard the opinion of the ALJ and substitute our own opinion unless we find, after reviewing the entire record, that it was clearly erroneous. It is my opinion that the record does not reflect that the ALJ was clearly erroneous and, thus, I would reverse the decision of the circuit court in this matter.