#24608-a-JKM

**2008 SD 25**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JAMES GERLACH,                                    Appellant,

    v.

STATE OF SOUTH DAKOTA,                            Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JAMES W. ANDERSON
Judge

\* \* \* \*

LEE C. "KIT" McCAHREN of
Olinger, Lovald, McCahren, Reimers, P.C.
Pierre, South Dakota                             Attorneys for appellant.

CHRISTINA L. FISCHER of
May, Adam, Gerdes & Thompson, LLP
Pierre, South Dakota                             Attorneys for appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 7, 2008

OPINION FILED **03/26/08**

#24608

MEIERHENRY, Justice

[¶1.]     James Gerlach, a Buildings and Grounds employee for the State of South Dakota, appeals an adverse ruling on a workers' compensation claim. We affirm.

## FACTS

[¶2.]     In 1998, Gerlach began his work for the State of South Dakota as a grounds employee. In September of 2003, Gerlach was moving chairs with a co-worker and injured his lower back. It is undisputed this 2003 injury was work-related. What is disputed is whether his complained of 2004 health problems were causally related to the 2003 injury. Gerlach claims that the 2003 injury was aggravated in the spring of 2004 by driving a tractor as part of his job. He claims that the tractor's rocking and jerking motion caused chronic pain in his lower back and legs, gait abnormalities and loss of coordination and balance.

[¶3.]     Gerlach sought treatment from several doctors: Dr. Monroe, a chiropractor; Dr Gerhart, a pain management specialist; Dr. Plumage, an internal medicine specialist; Dr. Koob, a neurologist; and other physicians including some from Mayo Clinic. Gerlach was also examined by Dr. Luther, the State's expert. Doctors Monroe, Koob, Plumage and Gerhart, determined that Gerlach's injuries were work-related. Dr. Luther determined that Gerlach's injuries were not related to his 2003 work injury. The other doctors gave no opinion as to whether Gerlach's condition was related to his work. None of the doctors were able to provide a diagnosis for his subjective complaints.

[¶4.] The physicians who determined that Gerlach's condition was work-related did not testify at the hearing or by deposition. Nevertheless, the parties stipulated to the admission of Gerlach's complete medical records for the Administrative Law Judge's (ALJ's) consideration. The State's expert, Dr. Luther, testified at the hearing.

[¶5.] Ultimately, the ALJ found Dr. Luther to be credible and adopted his opinion concluding that Gerlach was not entitled to workers' compensation. The circuit court affirmed the ALJ's decision. Gerlach claims on this appeal that the Department of Labor erred in denying his claim.

[¶6.] Our standard of review in workers' compensation cases is well established.

> "When the issue is a question of fact, then the actions of the agency are judged by the clearly erroneous standard; and when the issue is a question of law, then the actions of the agency are fully reviewable [*i.e.,* de novo]." "Mixed questions of fact and law are fully reviewable."
>
> When findings of fact are made based on live testimony, the clearly erroneous standard applies. Deference and great weight are given to the hearing examiner on fact questions. "When factual determinations are made on the basis of documentary evidence, however, we review the matter de novo, unhampered by the clearly erroneous rule."

Orth v. Stoebner & Permann Constr., Inc., 2006 SD 99, ¶¶27-28, 724 NW2d 586, 592 (citations omitted). "We do not substitute our judgment for the Department's on the weight of the evidence or the credibility of witnesses." Mettler v. Sibco, Inc., 2001 SD 64, ¶7, 628 NW2d 722, 724 (citation omitted). "The standard of review in an appeal to the Supreme Court from a trial court's appellate review of an administrative decision is de novo: unaided by any presumption that the trial court

#24608

is correct." Capital Motors, LLC v. Schied, 2003 SD 33, ¶10, 660 NW2d 242, 245 (citations omitted).

[¶7.]     When applying for workers' compensation benefits Gerlach bears the burden of proving a causal connection between his condition and his work-related injury. Wise v. Brooks Constr. Serv., 2006 SD 80, ¶21, 721 NW2d 461, 468. SDCL 62-1-1(7) provides that a compensable injury must be "established by medical evidence," and that "[n]o injury is compensable unless the employment or employment related activities are a major contributing cause of the condition complained of . . . ." Whether Gerlach's employment was a major contributing cause of his condition is necessarily a question of fact.

> In applying the statute, we have held "a worker's compensation award cannot be based on possibilities or probabilities, but must be based on sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment." We have further said "South Dakota law requires [Gerlach] to establish by medical evidence that the 'employment or employment conditions are a major contributing cause of the condition complained of." "A possibility is insufficient and a probability is necessary."

*Wise*, 2006 SD 80, ¶21, 721 NW2d at 468 (internal citations omitted).

[¶8.]     We review evidentiary rulings under an abuse of discretion standard. McDowell v. Citibank, 2007 SD 52, ¶26, 734 NW2d 1, 10. An abuse of discretion "is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." State v. Mattson, 2005 SD 71, ¶13, 698 NW2d 538, 544 (citations omitted). An error will not be overturned unless it "in all probability . . . produced some effect upon the final result." *Id.*; *McDowell*, 2007 SD 52, ¶26, 734 NW2d at 10.

[¶9.]     Gerlach contends that the ALJ committed reversible error by failing to consider certain stipulated evidence.  Specifically, Gerlach claims that the ALJ erroneously rejected South Dakota Retirement System (SDRS) (D-2) Physician Evaluation Forms.  As part of the evidence submitted to the ALJ, the State assembled a binder containing all of Gerlach's relevant medical history and both parties stipulated to the files' admission.  Within these voluminous records were six SDRS (D-2) Physician Evaluation Forms.  A SDRS (D-2) form is a single sheet of paper with small areas for the physician's comments and boxes for the physician to check regarding the cause of the patient's injury and the patient's capacity to work.  Each form was signed by a physician.  On three of the forms, the respective physician checked the box which affirmed that Gerlach's "condition is due to injury or sickness arising out of [Gerlach's] employment."

[¶10.]     Although the parties stipulated to the admission of the SDRS forms without objection, the ALJ acted sua sponte and disregarded the forms, based upon SDCL 3-12-142.[1]  That statute provides:

> An application for disability benefits pursuant to this chapter
> [South Dakota Retirement System], *any associated evidence and*
> *documents*, and the disability determination and decision
> related thereto shall be inadmissible and nondeterminative for
> any associated proceeding relative to [workers' compensation].

SDCL 3-12-142. (emphasis added).

---

1.     Although Gerlach contends that the ALJ discounted the SDRS forms for failing to utilize "magic language," citing *Wise,* 2006 SD 80, ¶25, 721 NW2d at 470; the ALJ discounted the SDRS forms based on SDCL 3-12-142.  This reason for rejecting the SDRS forms was expressly noted in conclusion of law number seventeen, which stated:  "The SDRS Physician's Evaluation forms presented by Claimant are inadmissible and cannot be used in this workers' compensation proceeding pursuant to SDCL 3-12-142."

[¶11.]     Generally, a party's stipulation to admit evidence serves as a waiver to any evidentiary objections the party could have raised. Stipulations permit a more amiable proceeding, cut costs of litigation and expedite the judicial process. Therefore, stipulations that are "not against good morals, or sound public policy, have been and will be enforced." *In re* New York, L. & W. R.R. Co., 1885 WL 10574, at *3 (NY Mar 10, 1885) (stating that "[p]arties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce"). *See also In re* Malloy's Estate, 17 NE2d 108, 109 (NY 1938) (stating "'[p]arties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. They may stipulate away statutory, and even constitutional rights'") (citation omitted); Cobbs v. Allied Chem. Corp., 661 A2d 1375, 1377 (PaSuperCt 1995) (noting "[i]t is well-established that parties, by stipulation, may bind themselves on all matters except those affecting jurisdiction and prerogatives of the court") (citation omitted); WIGMORE, EVIDENCE § 7a (Tillers rev. 1983) (stating parties may stipulate where law would exclude the evidence).

[¶12.]     Stipulations are typically upheld, unless the "usual rule of exclusion thereby suspended were one affecting a specific third person's interests or affecting vital general policies independent of the contracting parties." WIGMORE, *supra*, § 7a (providing an example of a forbidden stipulation as: "a waiver of the privilege against disclosing official's secrets of state"). We cannot surmise any "vital" general policy that would forbid the parties' stipulation in this case.

[¶13.]    When construing stipulations, courts "adopt the interpretation that is the most reasonable and probable, bearing in mind the objects which the parties intended to accomplish through the agreement." *Cobbs,* 661 A2d at 1377. In this case, the stipulation allowed for the ALJ to consider all of the pertinent evidence which tended to prove or disprove the causation and extent of Gerlach's injuries. For the ALJ to disallow the stipulated forms was an abuse of discretion.

[¶14.]    Although the ALJ erred by not considering the SDRS forms, as properly stipulated, the error did not constitute reversible error. The parties did "not stipulate that [the evidence] was to be taken as conclusive, and the question of [the experts'] credibility and the weight that should be accorded their [records] remained to be considered by the [fact finder]." Southern California Edison Co. v. Gemmill, 85 P2d 500, 502 (CalApp 4thDist 1938); People on Complaint of DeAngelis v. Guiseppe, 97 NYS2d 486, 487 (NYChildCt 1949), *order aff'd,* 276 AD 1102, 96 NYS2d 848 (NYAD2d Dep't 1950) (although reports may be stipulated into evidence they are accepted for what they are worth, without further examination of their author's expertise).

[¶15.]    In this case, three physicians who filled out the SDRS forms indicated that Gerlach's current health problems were work-related. These physicians were: Dr. Gerhart, Dr. Koob, and Dr. Monroe. The findings of fact and conclusions of law unequivocally demonstrate that the ALJ considered the physicians' opinions but did not find their opinions persuasive. Specifically, the ALJ determined that "[n]either Dr. Gerhart nor Dr. Koob fully reviewed all of [Gerlach's] medical records. [Therefore,] Dr. Gerhart's and Dr. Koob's opinions are rejected." The ALJ also

"rejected" Dr. Monroe's opinions as he too failed to read all of Gerlach's medical records, including his Mayo Clinic workup. Moreover, these physicians' opinions were disputed by Dr. Luther's testimony at the hearing. Specifically, the ALJ found: "[i]n light of Dr. Luther's credible opinions and testimony, Dr. Monroe's opinion is rejected." As stated above, "[w]hen findings of fact are based on *live testimony*, the clearly erroneous standard applies." *Orth,* 2006 SD 99, ¶28, 724 NW2d at 592 (citation omitted) (emphasis added).

[¶16.] Although the ALJ failed to consider the stipulated SDRS forms, the ALJ did consider all the medical records admitted into the record, including the doctors' opinions, personal evaluations and notes. The ALJ rejected these physicians' opinions as lacking foundation because the physicians failed to "fully review[] all of [Gerlach's] medical records," and found Dr. Luther's live testimony more persuasive. The SDRS forms, if considered, would not have bolstered these physicians' credibility nor would it have provided more foundation for their opinions. Therefore, the ALJ's evidentiary error of failing to consider the stipulated SDRS forms was harmless because they, "in all probability," would not have affected the final decision. *Mattson*, 2005 SD 71, ¶13, 698 NW2d at 544 (stating that we will not overturn evidentiary rulings unless they "in all probability . . . produced some effect upon the final result") (citations omitted).

[¶17.] The only other physician Gerlach relied on to prove causation was Dr. Plumage. Dr. Plumage noted that Gerlach's condition was caused by an "initial back injury and then subsequent exacerbations." Dr. Plumage's notes indicated that Mayo Clinic determined that Gerlach's condition was "certainly work-related in

nature" and that he "[w]ould have to agree." The ALJ noted that "[n]o physician at the Mayo Clinic 'felt that the injury was certainly work-related in nature.' The physicians at Mayo Clinic could not and declined to determine the nature of [Gerlach's] condition, let alone the cause." The ALJ also noted that the complaints that Dr. Plumage treated, "related to increasing weakness and balance problems in the lower extremities, . . . were different than the symptoms [Gerlach] experienced after the September 2003 injury." The ALJ found that "Dr. Plumage was unable to determine a diagnosis for [Gerlach's] subjective complaints and 'was uncertain what to make of the overall progressive weakness.'" Furthermore, according to Dr. Goff, a physician at the VA Hospital, Gerlach's lower extremity symptoms could not be connected to his back pain. Based on these facts, the ALJ found that Dr. Plumage's opinion lacked foundation. Thus, the ALJ rejected all of the physicians' opinions that Gerlach offered to prove causation and accepted the opinions of Dr. Luther.

[¶18.] Dr. Luther, a self-employed certified Independent Medical Examiner and a certified Medical Review Officer, testified as an expert for the State. Dr. Luther reviewed Gerlach's *entire* medical record and also examined Gerlach. The ALJ concluded that Dr. Luther's opinions were "[b]ased on a full and complete analysis of [Gerlach's] voluminous medical records, [and were] well-founded, well-reasoned, fully explained, and logical."

[¶19.] Dr. Luther testified as follows:

> [I]t is my medical opinion based upon a reasonable degree of medical certainty that [Gerlach's] occupational injury [in 2003] is not a major contributing factor to the symptoms that he has at this point. And my opinion was based on the fact that [Gerlach] had negative imaging studies, including normal MRI scans . . . his injury would have been most consistent with a lumbar strain

> or sprain, and in my opinion, there would have been ample recovery time and that [Gerlach] would have been at maximum medical improvement for his industrial injury.

Furthermore, after reviewing a neurologist's records, Dr. Luther testified that "further treatment would not be related to [Gerlach's 2003 injury]."[2] Ultimately, the ALJ found Dr. Luther "credible" and determined that his opinions were "entitled to more weight than the unexplained and unsupported opinions expressed solely in the medical records." Under our standard of review, the ALJ's findings of fact were not clearly erroneous.

[¶20.] We affirm.

[¶21.] GILBERTSON, Chief Justice, and SABERS and KONENKAMP, Justices, concur.

[¶22.] ZINTER, Justice, deeming himself disqualified, did not participate.

---

2.    Although Gerlach now attempts to argue that his condition may have been caused by other employment injuries, independent of the 2003 work injury, he failed to present any evidence of this argument at the hearing.