#25604-rev & rem-JKK

**2011 S.D. 4**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

BUFFALO RIDGE CORPORATION,                     Plaintiff and Appellant,

v.

LAMAR ADVERTISING OF
SOUTH DAKOTA, INC.,                            Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE STUART L. TIEDE
Judge

\* \* \* \*

DANIEL K. BRENDTRO of
Zimmer Duncan & Cole, LLP                 Attorneys for plaintiff
Sioux Falls, South Dakota                 and appellant.

JOHN K. NOONEY
AARON T. GALLOWAY of
Nooney, Solay & Van Norman, LLP           Attorneys for defendant
Rapid City, South Dakota                  and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 10, 2011

OPINION FILED **01/26/11**

#25604

KONENKAMP, Justice

[¶1.]    In this dispute over billboard leases, we reverse and remand for further proceedings.

## Background

[¶2.]    In 2001, Flynn Advertising contracted with Buffalo Ridge Corporation to lease certain real property along Interstate 90, near Sioux Falls, South Dakota. Flynn would construct several billboards on the leased property. The parties executed four written lease agreements, encompassing five billboard sites. The agreements identified the specific mile markers where the billboards were to be located. Each lease had a three-year term, with an automatic renewal for an additional three years, unless Buffalo Ridge gave notice of termination in the final month of the lease. The rental rates were $250 per sign, per month, paid quarterly. Each lease had the following provision: "[i]n the event that the lease is not renewed at a mutually agreed on term and price, the Lessor [Buffalo Ridge] shall, at [its] option, have the right to purchase from the Lessee [Flynn, or its successors], at the current replacement value, all materials which are located on the structure and owned by the Lessee."

[¶3.]    Flynn later assigned its interest in the leases to Lamar Outdoor Advertising of South Dakota, Inc. In 2006, Buffalo Ridge began terminating its leases with Lamar. One lease was set to expire on September 1, 2006, two on November 1, 2006, and one on February 1, 2007. Buffalo Ridge informed Lamar that if it wished to continue leasing the property, the new rental rate would be $750 per month for each lease, on a month-to-month basis, with interest at 1.5% per

month for late payments. Lamar declined the new rental terms, and negotiations for different terms were unsuccessful.

[¶4.]    On November 1, 2006, a Lamar employee, Doug Rumpca, tried to remove one or more of the billboard structures from Buffalo Ridge's property. Brad Songstad, the president of Buffalo Ridge, told Rumpca not to take the billboard structures down. Songstad reminded Rumpca that Buffalo Ridge had a purchase option under the lease agreements. Songstad also proposed different lease terms: $650 per month for each billboard site.[1]  Again Lamar declined. Despite Lamar's most recent rejection of Buffalo Ridge's new lease terms, it continued to negotiate with Buffalo Ridge. Lamar continued to collect revenue from its billboard advertising, while paying Buffalo Ridge $250 per month on each of the leases. Buffalo Ridge did not cash any of the checks.

[¶5.]    On June 20, 2007, Buffalo Ridge served a notice to quit on Lamar and then brought suit a week later for (1) a writ of eviction against Lamar, (2) an order enjoining Lamar from removing any of the materials or structures, (3) an order allowing Buffalo Ridge to exercise its purchase option under the leases, and (4) an award of "all past due rent, lost profits, damages, late fees, and interest in an amount to be determined at the time of trial." Lamar answered claiming that the

---

1.    There are two other billboard sites leased to Lamar by Buffalo Ridge. Those billboards are not at issue in this case because they automatically renewed (July 1, 2006) before Buffalo Ridge indicated its intent to change the lease terms. Songstad's proposal to Rumpca for $650 per month for all billboards included the two billboards not part of this case.

leases were still valid and enforceable and moved to dismiss Buffalo Ridge's complaint.

[¶6.]    Following a court trial in November 2007, the circuit court issued its oral findings and conclusions.[2]  It found that Lamar "is the owner of everything that was used to erect each of those billboards except the material located on the east side but subject to the option right of the lessor to purchase certain materials." It concluded that although Buffalo Ridge did not expressly terminate the leases, it gave notice to Lamar that the rental terms were going to change.  Negotiations never resulted in a "meeting of the minds or an agreement as to those terms and conditions and particularly the amount of the rent."  The court recognized that the parties were in limbo: "Lamar was unwilling to pay the rent demanded by the landlord.  The landlord was unwilling to accept the rent offered by the tenant and the landlord wouldn't permit the tenant to remove."  Because the parties could not reach an agreement, the court ruled that Buffalo Ridge was entitled to have its land back and granted Lamar an opportunity to remove the billboard structures, subject to Buffalo Ridge's option to purchase them.  The court allowed "a period of thirty days within which [Buffalo Ridge], if it's going to exercise its option, to indicate that it intends to exercise it[.]"  If, after thirty days, Buffalo Ridge failed to exercise its option, the court gave "an additional thirty days to Lamar to then remove all of the property that belongs to it[.]"

---

2.    The transcript of this trial is not in the record.

[¶7.] In the course of the court's oral ruling, the parties and court also discussed when the court's decision would take effect. It was agreed that the court would issue a judgment of eviction, but delay signing it. The delay would allow settlement negotiations on the value of the replacement cost of the billboard structures if Buffalo Ridge decided to exercise its option to purchase. At the conclusion of the hearing, it was decided that the thirty/sixty day time frame would start the day the order was signed.

[¶8.] From November 28, 2007 until May 15, 2008, Buffalo Ridge and Lamar continued negotiations, which proved unsuccessful. On May 15, 2008, Buffalo Ridge tendered to Lamar what it considered the replacement value of the billboard structures. As part of its tender, it gave Lamar the uncashed rent checks Lamar had sent Buffalo Ridge, amounting to $35,250.00, along with a Buffalo Ridge corporate check for $2,667.17, all totaling $37,917.17. Lamar did not accept the tender.

[¶9.] On July 16, 2008, Buffalo Ridge executed the court's November 28, 2007 judgment for delivery of possession. A court trial was held on October 5, 2009, to determine the "current replacement value" of the billboard materials and what damages Buffalo Ridge may be entitled to. At trial, the parties stipulated that Buffalo Ridge exercised its option to purchase on December 27, 2007, which stipulation was accepted by the court.[3] At the conclusion of the trial, the court

---

3. After an off-the-record discussion about the effective date of the stipulation, the court stated, "Mr. Nooney [counsel for Lamar] has admitted and stipulated to the effective date of the exercise of the options; is that what you are telling me?" Mr. Nooney: "Yes, Your Honor, that's correct." The court:

(continued . . .)

directed Buffalo Ridge and Lamar to address the damages issue in their proposed findings and conclusions.

[¶10.]    On February 3, 2010, the court issued findings of fact and conclusions of law.  Contrary to the parties' stipulation, the court found that Buffalo Ridge exercised its option to purchase on November 1, 2006.  It also found that after November 1, 2006, Buffalo Ridge and Lamar "continued intermittent negotiations[.]"  During the negotiation period, Lamar continued to pay Buffalo Ridge $250 per month into 2009 and Buffalo Ridge refused to cash or negotiate the rent checks.  The court acknowledged that, on November 28, 2007, it entered oral findings and conclusions on Buffalo Ridge's action for eviction, an injunction, and declaratory relief, and gave "Buffalo Ridge thirty days to exercise the option to purchase all the materials located on the billboard structures[.]"  It declared that "Buffalo Ridge had first informed Lamar of the intention of Buffalo Ridge to exercise its option to purchase the materials on the structures on or about November 1, 2006[.]"

[¶11.]    According to the court, as of November 1, 2006 "Buffalo Ridge had the exclusive possession and control of the billboard structures and was free to do with them what it pleased subject only to its obligation to pay replacement value for certain materials on the billboard structures."  Therefore, Lamar's continued receipt of income on its use of these billboards was, in the court's words, "a fortuitous

_____

(. . . continued)
> "And that was contained in my earlier findings and conclusions."  Mr. Nooney: "Yes, in the earlier Judgment entered by this [c]ourt."

circumstance for Lamar arising solely from the neglect or failure of Buffalo Ridge" to act.

[¶12.]     On the issue of the replacement value, the court found that "[t]he parties did attempt to negotiate the replacement value in the period between December 2007 and the tender by Buffalo Ridge on May 15, 2008, but failed to reach an agreement." The court ruled that the current replacement value for the billboard structures was $37,917.17, due and owing by Buffalo Ridge to Lamar. The court awarded Lamar prejudgment interest at the statutory rate of 10% beginning after May 15, 2008. It further found that the attempted tender by Buffalo Ridge on May 15, 2008 was "conditional." Finally, it held that "Buffalo Ridge shall recover no damages from Lamar."

[¶13.]     Buffalo Ridge submitted written objections to the court's findings and conclusions. It argued that the court's ruling that the option was exercised on November 1, 2006 was not supported by the evidence and was contrary to the parties' stipulated date at trial, a stipulation the court accepted. Buffalo Ridge further asserted that the court failed to set off or give partial satisfaction to Buffalo Ridge for Lamar's uncashed rent checks, paid after the expiration of the leases. It then provided to the court its requested damages: $24,750 representing uncashed rent checks from the expiration of the leases until May 15, 2008; $14,250 representing uncashed rent checks from May 15, 2008 to 2009; and $19,500 for payments made by Lamar with the uncashed rent checks for billboards not part of

this lawsuit.[4]  Lastly, Buffalo Ridge challenged the court's award of prejudgment

interest.  The court overruled Buffalo Ridge's objections and refused its request for

damages.

[¶14.]      On appeal, Buffalo Ridge advances multiple issues, restated as follows:

the court erred when it (1) held that Buffalo Ridge exercised its option to purchase

on November 1, 2006; (2) failed to find that Lamar was a willful holdover tenant

under SDCL 21-3-8; (3) held that Buffalo Ridge's tender on May 15, 2008 was

conditional; and (4) failed to award Buffalo Ridge damages or restitution for

Lamar's use of the billboards for three years.[5]

## Analysis and Decision

[¶15.]      Buffalo Ridge first argues that the court erred when it held that it

exercised its option to purchase on November 1, 2006.  Not only did the parties

stipulate that the option was exercised on December 27, 2007, but the court

accepted the stipulation.[6]  Moreover, the court, on November 28, 2007, more than

---

4.      Lamar sent Buffalo Ridge $250 per month on the two billboards not part of
        this suit.  Buffalo Ridge did not cash or accept the payments because Lamar
        included the payments within the checks for the expired leases.

5.      Standard of Review: We review a circuit court's findings of fact for clear error
        and conclusions of law de novo.  *Hofeldt v. Mehling,* 2003 S.D. 25, ¶ 9, 658
        N.W.2d 783, 786 (citations omitted).

6.      Some courts have held that an option to purchase under a lease agreement
        expires upon expiration of the lease.  *See, e.g., Mr. Sign Studios, Inc. v.
        Miguel,* 877 So. 2d 47, 50 (Fla. Ct. App. 2004); *Synergy Gas Corp. v. H.M.
        Orsburn & Son, Inc.,* 689 S.W.2d 594, 596 (Ark. Ct. App. 1985).  Therefore,
        Buffalo Ridge's options to purchase under the leases arguably expired when
        each lease expired:  September 1, 2006, November 1, 2006, and February 1,
        2007.  The parties, however, do not bring up this issue and we need not
        address it.

one year past November 1, 2006, specifically gave Buffalo Ridge thirty days to exercise its option. While Lamar concedes the parties stipulated that the option was exercised on December 27, 2007, it maintains that the court was entitled to change its mind after the October 2009 trial, even though it accepted the stipulation. Second, while Lamar acknowledges that on November 28, 2007 the court gave Buffalo Ridge thirty days to exercise its option, the court's ultimate judgment for delivery and possession, issued on July 16, 2008, contemplated that Buffalo Ridge may have already exercised that right. Thus, Lamar maintains that the court's November 1, 2006 date was not erroneous.

[¶16.] Why the court declared the option exercised on November 1, 2006 is unclear. There is no evidence indicating exactly when Buffalo Ridge gave Lamar notice of its intent to exercise its option to purchase. But the parties disposed of this question by stipulating that Buffalo Ridge exercised its option on December 27, 2007. "It is well-established that parties, by stipulation, may bind themselves on all matters except those affecting jurisdiction and prerogatives of the court." *Cobbs v. Allied Chem. Corp.*, 661 A.2d 1375, 1377 (Pa. Super. Ct. 1995); *see also Gerlach v. State*, 2008 S.D. 25, ¶ 11, 74 N.W.2d 662, 667 (quoting the above language from *Cobbs*). That the option was exercised on December 27, 2007, rather than November 1, 2006 coincides, not only with the parties' stipulation, but with the court's oral findings and conclusions from November 28, 2007. Because, on November 28, 2007, the court gave Buffalo Ridge thirty days to exercise its option, there was no way for Buffalo Ridge to exercise it any earlier than November 28, 2007. Moreover, on November 1, 2006, one lease was still valid and enforceable, not

due to expire until February 1, 2007. Therefore, the option for that lease could not, as a matter of law, have been exercised on November 1, 2006. Finally, it is undisputed that on November 1, 2006, and for a considerable time thereafter, the parties were negotiating new lease terms, not the "current replacement value" owed by Buffalo Ridge after it exercised its option. Because there is no support for the November 1, 2006 date, the court erred when it entered findings reflecting that the option was exercised on any other date than December 27, 2007.

[¶17.]     Buffalo Ridge next argues that the court erred when it failed to declare Lamar a holdover tenant under SDCL 21-3-8. Buffalo Ridge claims that Lamar's continued occupation of the billboards after the leases expired was willful and entitles Buffalo Ridge to double damages. Indeed, Lamar continued to occupy the leased billboards under the expired lease agreements. Mere occupation, however, does not constitute "willfully holding over real property" under SDCL 21-3-8. A claim for willfully holding over requires a "notice to quit . . . duly given, and demand of possession made[.]" *Id.* Here, after the leases expired Buffalo Ridge and Lamar negotiated new lease terms in contemplation that new leases would be executed. With this period of negotiation, Buffalo Ridge did not give its notice to quit until June 20, 2007. Additionally, there is no evidence that Buffalo Ridge made a demand for possession. Rather, it exercised its option to purchase the billboard materials. SDCL 21-3-8 not being satisfied, the court did not err when it declined to find Lamar a holdover tenant under any of the expired leases.

[¶18.]     Buffalo Ridge next argues that the court erred when it held that its May 15, 2008 tender to Lamar was conditional. It maintains that the tender of the

uncashed rent checks previously issued by Lamar ($35,250.00) and a Buffalo Ridge corporate check for $2,667.17 was unconditional, which would stop the running of interest on its obligation to Lamar. *See* SDCL 20-5-18.

[¶19.] Only when a tender is unconditional will interest toll on an obligation. *Id.* Yet, for tender to be unconditional, it must be "'the actual production of a sum not less than the amount due on a specific debt or obligation.'" *Berbos v. Krage*, 2008 S.D. 68, ¶ 22, 754 N.W.2d 432, 438 (quoting *Adrian v. McKinnie*, 2004 S.D. 84, ¶ 10, 684 N.W.2d 91, 96). Here, at the time Buffalo Ridge tendered its payment, the parties were disputing the current replacement value of the billboard materials, which meant that Buffalo Ridge's tender was conditioned on Lamar accepting Buffalo Ridge's valuation. *See Dougherty v. Beckman*, 347 N.W.2d 587, 591 (S.D. 1984) (tender must be for full obligation). Buffalo Ridge's tender was also conditioned on Lamar accepting its own previously issued checks as payment, as the tender included over $35,000 in uncashed rent checks issued by Lamar to Buffalo Ridge. The court did not err when it ruled Buffalo Ridge's tender conditional.

[¶20.] Buffalo Ridge lastly argues that the court erred when it failed to award any damages for Lamar's continued occupation of the billboards after the leases expired. In particular, Buffalo Ridge claims it is entitled to contract damages at a rate of $750 per month, per lease after expiration, reflecting the lease terms offered to Lamar if Lamar continued to lease the billboard sites. Buffalo Ridge alternatively requests restitution for unjust enrichment: it conferred a benefit on Lamar (use of the billboards); Lamar was aware of the benefit (Lamar knew Buffalo Ridge was not cashing the rent checks); and it is inequitable to allow Lamar to

retain the benefit of using the billboards without paying Buffalo Ridge. *See Hofeldt v. Mehling,* 2003 S.D. 25, ¶ 16, 658 N.W.2d 783, 788 (citation omitted). At the very least, Buffalo Ridge contends that the court should have set off the value of the uncashed rent checks issued by Lamar to Buffalo Ridge against Buffalo Ridge's obligation to pay Lamar the current replacement value of the billboards.

[¶21.] In response, Lamar maintains that simply because it continued to use the billboard sites does not mean it owes Buffalo Ridge $750 per month, per lease. It avers that Buffalo Ridge prevented Lamar from vacating the leased property, and therefore, cannot now claim that it was damaged because Lamar failed to vacate. Lamar also claims that Buffalo Ridge is not entitled to restitution because it acted with unclean hands: it "created the situation in which it found itself" by not allowing Lamar to enter the property and remove the billboard structures.

[¶22.] The issue of what damages Buffalo Ridge is entitled to, if any, is not developed in the record. It is clear that the purpose of the October 2009 trial was to address the issue of the current replacement value of the billboards and Buffalo Ridge's damages. However, it was not until the conclusion of the trial that the issue of damages was specifically addressed. The court directed the parties to present the damages issue by way of proposed findings of fact and conclusions of law. Lamar proposed that "Buffalo Ridge shall recover no damages from Lamar." As support, it argued that Lamar's receipt of advertising income from the billboards for almost three years was a "fortuitous circumstance for Lamar arising solely from the neglect or failure of Buffalo Ridge to either permit Lamar to enter and remove the billboard materials, or to notify such advertisers that Buffalo Ridge now owned and was in

control of the billboard structures and any leasing or advertising arrangements needed to be made with Buffalo Ridge; or to remove the advertising faces from the billboards once Buffalo Ridge had possession and control of the billboards upon expiration of the leases." Buffalo Ridge objected to these findings and conclusions and set forth what damages it requested and for what reasons. The court refused Buffalo Ridge's proposed findings and overruled its objections.

[¶23.] From our review of the record, the court erred when it failed to award Buffalo Ridge money damages or restitution for Lamar's continued occupation of the billboard sites after the leases expired. It is undisputed that Lamar continued to use and occupy the billboard sites after the leases expired. Indeed, it paid Buffalo Ridge $250 per month, per lease, but Buffalo Ridge did not cash the payments because of the pending litigation. That the court erred when it failed to award damages occurred in part through its erroneous declaration that Buffalo Ridge exercised its option to purchase on November 1, 2006. Many of the court's findings incorporate and rely on the November 1, 2006 date. We remand for a proper determination of damages or restitution.

[¶24.] Reversed and remanded.

[¶25.] GILBERTSON, Chief Justice, and ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.