#26296-a-JKK

**2013 S.D. 8**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BETTE THOMPSON,                                    Plaintiff and Appellant,

v.

AVERA QUEEN OF PEACE HOSPITAL
and CHRIS KROUSE, M.D.,                      Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TIMOTHY W. BJORKMAN
Judge

* * * *

CASEY N. BRIDGMAN
Wessington Springs, South Dakota

        and

RONALD K. MILLER
Plankinton, South Dakota                       Attorneys for plaintiff
                                                                and appellant.


ROGER A. SUDBECK
MEGHANN M. JOYCE of
Boyce, Greenfield, Pashby & Welk, LLP
Sioux Falls, South Dakota                       Attorneys for defendants
                                                                and appellees.

* * * *

ARGUED NOVEMBER 7, 2012

OPINION FILED **01/16/13**

KONENKAMP, Justice

[¶1.] After her surgeon performed wrist surgery, plaintiff went to a second doctor complaining of ongoing wrist pain. She had to undergo another surgery. Plaintiff brought suit for medical malpractice against the first surgeon. A jury returned a verdict for the surgeon. Plaintiff appeals.

## Background

[¶2.] On September 29, 2007, Bette Thompson, 70 years old at the time, fell while pruning a tree and fractured her left wrist. She was treated in the emergency room at Avera Queen of Peace Hospital in Mitchell, South Dakota, after which her arm was placed in a sling and she was directed to make an appointment with a surgeon. On October 1, 2007, Dr. Chris Krouse, an orthopedic surgeon, ordered an x-ray, which revealed that Thompson fractured her left distal radius — the radius being the larger of the two bones in the forearm and the distal being the end toward the wrist. At first, Dr. Krouse chose to treat the fracture conservatively, but later recommended surgery.

[¶3.] On October 20, 2007, Dr. Krouse operated on Thompson's left wrist. He intended to reduce the fracture with the goal of placing her wrist as close as possible in its natural alignment. He implanted a metal plate and screws to hold the bone in place. Using a fluoroscope during the surgery, he rotated Thompson's wrist to confirm that the screws were holding the metal plate in the proper position. He considered the surgery a success.

[¶4.] Thompson returned to Dr. Krouse's office for follow-up care. At each visit, he ordered x-rays of her wrist and discussed these x-rays with her. At

Thompson's last visit on January 16, 2008, he ordered an x-ray, which he believed confirmed that he achieved a satisfactory reduction of the distal radius and that the alignment of the wrist post surgery had not collapsed.

[¶5.]     On March 24, 2008, Thompson visited another orthopedic surgeon, Dr. Blake Curd. She had continued to experience pain in her left wrist. Dr. Curd ordered an x-ray, which revealed that the reduction and alignment of her wrist had collapsed. Dr. Curd was concerned that the screws were penetrating Thompson's wrist joint space. A CT scan led Dr. Curd to recommend another surgery to remove the metal plate and screws, which was accomplished on May 1, 2008.

[¶6.]     After Dr. Krouse refused Thompson's request to reimburse her for the costs she incurred for the surgery performed by Dr. Curd, Thompson brought suit for medical malpractice against Dr. Krouse and Avera Queen of Peace. She alleged that Dr. Krouse negligently failed to achieve a satisfactory reduction of her left wrist and negligently left one screw protruding into the wrist space.

[¶7.]     Shortly before the trial, Thompson's expert, Dr. Charles Clark, testified by deposition that in addition to failing to satisfactorily reduce the distal radius and negligently placing a screw, Dr. Krouse failed to inform Thompson about the status of her condition following surgery. Dr. Clark repeated this opinion later in the deposition, and counsel for Dr. Krouse objected asserting that Dr. Clark was testifying to a previously undisclosed expert opinion. Counsel moved in limine to exclude Dr. Clark's opinion that Dr. Krouse failed to inform Thompson about the status of her condition. After a hearing, the circuit court granted the motion in part and ordered that certain portions of Dr. Clark's testimony be redacted. At the close

of trial, Thompson requested a jury instruction on the doctrine of res ipsa loquitor. The court refused the instruction, finding that it was unsupported in the record. The jury returned a verdict for Dr. Krouse. Thompson appeals on the grounds that the court abused its discretion when it excluded portions of Dr. Clark's testimony and rejected the jury instruction on res ipsa loquitor.[1]

## Analysis and Decision

[¶8.] Counsel for Dr. Krouse did not object the first time Dr. Clark broached his opinion that Dr. Krouse breached the standard of care when he failed to inform Thompson on the condition of her wrist after surgery. Because there was no objection when the offending statement was made, Thompson insists that Dr. Krouse waived his right to object to this testimony after the deposition concluded. In Thompson's view, had Dr. Clark testified live at trial, the jury would have heard his statement when no objection was made. Thompson further argues that if deposition testimony can be objected to after the fact, parties will be able to sit on their right to object, only to later scour the deposition for errors and move for exclusion. Apparently, the parties did not enter the common stipulation before the deposition that all objections, except as to form, would be reserved.

[¶9.] "[E]rrors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the

---

1. Standard of Review: The circuit court has discretion in admitting or excluding expert testimony, and therefore, we review a court's evidentiary ruling on expert testimony for an abuse of discretion. *Zepp v. Hofmann*, 444 N.W.2d 28, 31 (S.D. 1989). When a court refuses a requested instruction, we review for prejudicial error. *Carpenter v. City of Belle Fourche*, 2000 S.D. 55, ¶ 27, 609 N.W.2d 751, 762 (citations omitted).

taking of the deposition." SDCL 15-6-32(d)(3)(B). This rule gives "the erring party an opportunity to correct the mistake, and to prevent waste of time and money by a subsequent claim that a deposition must be suppressed because of some technical error long ago." *Zepp*, 444 N.W.2d at 33 (quoting 8 C. Wright and A. Miller, Federal Practice and Procedure § 2153 (1970)). When a timely objection is made during a deposition, counsel gains the opportunity to rephrase the question, provide clarification, or a better foundation.

[¶10.] Here, an objection by Dr. Krouse at the time of the question and answer would not have obviated, removed, or cured the objectionable testimony. Whether Dr. Clark's standard-of-care answer constituted a previously undisclosed expert opinion required a ruling by the circuit court. An objection before admission of the deposition testimony at trial gave the court an opportunity to rule. Indeed, "[t]he ideal in any trial is to keep improper and inflammatory questions or evidence from the jury." *See id.* Therefore, a deposition that contains improper evidence "should be stricken prior to reading to the jury." *Id.* The court did not abuse its discretion in excluding the previously undisclosed opinion.

[¶11.] Thompson next argues that Dr. Clark's testimony was not a new opinion because Dr. Clark was merely expanding on his previous opinion that "[i]t is the whole treatment of the fracture that is below" the standard of care. A review of the deposition testimony and discovery produced reveals otherwise. Before the deposition, Dr. Clark opined that Dr. Krouse breached the standard of care when he (1) failed to recognize that he did not perform an adequate reduction, (2) did not correct the ulna being longer in comparison to the radius, and (3) failed to recognize

that a screw was in the wrist joint space. There was no opinion offered on a duty to inform or failure to inform Thompson. In his deposition, Dr. Clark specifically opined, for the first time, that "the standard of care required [Dr. Krouse] to let the patient know that [she] has an incomplete reduction and that may cause problems. And that there's a screw that's prominent there and that should have been investigated further." This opinion was new and previously undisclosed.

[¶12.]    Thompson next contends that, even if Dr. Clark's testimony constituted previously undisclosed expert opinion, "the proper course would have been to allow [Dr. Krouse] to obtain a continuance[.]" Thompson argues that by excluding the evidence, the court "in effect" dismissed her case and entered a default judgment against her. She further maintains that the court prevented her from having "her day in court" and proving her claim that Dr. Krouse breached the standard of care.

[¶13.]    When a party attempts to offer a previously undisclosed expert opinion, that party may not "use as evidence at trial," the "information not so disclosed." SDCL 15-6-37(c)(1). Here, the court properly excluded the specific opinion of Dr. Clark that Dr. Krouse breached the standard of care when he failed to inform Thompson on the condition of her wrist after surgery.[2] Such exclusion did

---

2    The court did not exclude all evidence related to Dr. Krouse's failure to inform Thompson on the condition of her wrist. Specifically, the court overruled Dr. Krouse's objection to the following testimony by Dr. Clark:

> you should let the patient know that you've got a problem, that you have an inadequate reduction, just so she could know.

(continued . . .)

not effectively enter a default judgment against Thompson or otherwise prevent her from presenting expert testimony that Dr. Krouse breached the standard of care when he failed to perform an adequate reduction and failed to notice the screw in Thompson's wrist joint area.

[¶14.]     Lastly, Thompson contends that the court abused its discretion when it rejected her requested instruction on the doctrine of res ipsa loquitor. She contends the instruction was warranted because Dr. Krouse had full management and control of the operation, the medical procedure failed and had to be corrected by another surgeon, and she incurred damages as a result. She argues that "reasonable people do not go into surgery expecting to come out of the surgery with screws protruding into a joint," and when such happens, it is because the doctor with full management and control of the operation was negligent.

[¶15.]     Under the doctrine of res ipsa loquitor, negligence is inferred from surrounding circumstances because the specific act of negligence is not known and the type of injury in and of itself provides evidence of negligence. *Schmeling v. Jorgensen*, 77 S.D. 8, 18, 84 N.W.2d 558, 564 (1957). But if the negligence is known the doctrine has no application. *Malloy v. Commonwealth Highland Theatres, Inc.*,

_____

(. . . continued)

> The appropriate thing I believe would have been to say I'm worried about the screw, maybe we should get a CT scan here and make sure it is not in the joint, and if it is then take that screw out. But the option as far as the shortening is concerned is to tell the patient it is short here and let's see how you do, but down the road I may have to either cut the bone or shorten the ulna, but the patient should be informed about what's going on with their wrist.

375 N.W.2d 631, 636 (S.D. 1985). Moreover, the doctrine of res ipsa loquitur "should be invoked sparingly and only when the facts and demands of justice make the application essential." *Barger v. Chelpon*, 60 S.D. 66, 73, 243 N.W. 97, 100 (1932); *see also Shipley v. City of Spearfish*, 89 S.D. 559, 561, 235 N.W.2d 911, 913 (1975).

[¶16.] Here, Thompson alleged that Dr. Krouse was negligent when he inadequately reduced her fracture and failed to notice that a screw protruded into her wrist joint space. As support, Thompson presented direct evidence through expert testimony that Thompson's wrist did not collapse as a risk and consequence of surgery, but as a result of Dr. Krouse's specific negligence. "Although a plaintiff does not waive instructions on res ipsa loquitur by trying to establish specific acts of negligence through the introduction of some evidence which does not clearly and definitely establish the exact cause of the injury, *Fleege v. Cimpl*, 305 N.W.2d 409, 414 (S.D. 1981), res ipsa loquitur is a rule founded on the absence of specific proof of omissions or facts which constitute negligence." *Malloy,* 375 N.W.2d at 636 (citing *Barger,* 60 S.D. at 73, 243 N.W. at 100). There being specific proof of negligence in this case, the court did not err in refusing the instruction.

[¶17.] Affirmed.

[¶18.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.