#27953-a-DG
**2017 S.D. 90**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BASIL O'DAY and TRACY MCCLURE,
as Guardians Ad Litem for N.W.O.,          Plaintiffs and Appellants,

v.

STEPHEN NANTON, M.D.,          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK SALTER
Judge

* * * *

LEE C. "KIT" MCCAHREN of
Olinger, Lovald, McCahren
  Van Camp & Konrad, PC
Pierre, South Dakota          Attorneys for plaintiffs and
                              appellants.


ROGER A. SUDBECK
MATTHEW D. MURPHY of
Boyce Law Firm, LLP
Sioux Falls, South Dakota          Attorneys for defendant and
                                   appellee.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 2, 2017
OPINION FILED **12/20/17**

GILBERTSON, Chief Justice

[¶1.]        Basil O'Day and Tracy McClure (Appellants), as Guardians Ad Litem for N.W.O., sued Steven Nanton, M.D., for medical malpractice alleging he improperly treated N.W.O. with the drug *Reglan*.  At the jury trial, Appellants attempted to present undisclosed rebuttal testimony from an expert witness and also requested a nonapportionment-of-damages jury instruction.  The circuit court excluded the undisclosed expert witness offered in rebuttal from testifying, and it denied Appellant's requested jury instruction.  The jury concluded Dr. Nanton was not negligent and returned a verdict in his favor.  The Appellants appeal, arguing that the circuit court erred in excluding Appellants' rebuttal expert witness and in refusing Appellants' nonapportionment-of-damages jury instruction.  We affirm.

**Facts and Procedural History**

[¶2.]        In September 2008, N.W.O. was referred to Dr. Nanton, a pediatric gastroenterologist, to address severe gastrointestinal issues.  N.W.O. was about two months old.  He was vomiting and having trouble keeping food down that resulted in fussiness, irritability, crying, inconsolableness, and sleeplessness.  Dr. Nanton subsequently diagnosed N.W.O. with severe gastroesophageal reflux disease (GERD).  Over the course of 19 months, Dr. Nanton examined N.W.O. a number of times, performed multiple tests, altered formula and food types, and prescribed medications to treat N.W.O.'s ailments.  One of the medications Dr. Nanton prescribed was Reglan.[1]

---

1.        Reglan is a brand name for Metoclopramide.  According to Dr. Nanton, Reglan works to promote the emptying of the stomach into the intestine so
                                                                    (continued . . .)

[¶3.] Reglan use is recommended for a maximum of 12 weeks except in cases where the therapeutic benefits outweigh the risks. Although many adverse side effects have been associated with Reglan use, Dr. Nanton testified that he believed the benefits outweighed the risks in N.W.O.'s situation. Throughout N.W.O.'s treatment, Dr. Nanton attempted to wean N.W.O. off Reglan as his conditions improved, but N.W.O.'s vomiting would reappear and the Reglan dosage had to be reinstated.

[¶4.] On July 1, 2009, Tracy McClure, N.W.O.'s mother, started noticing problems with N.W.O.'s development. She observed issues relating to standing, balancing, and facial grimacing. Ms. McClure also reported that N.W.O. exhibited uncoordinated jerky motions. Dr. Nanton also noticed motor and developmental delays in N.W.O. Subsequently, N.W.O. was referred to pediatric neurologists to address N.W.O.'s issues. During N.W.O.'s treatment course with Dr. Nanton, various healthcare providers and physicians treated N.W.O., amounting to approximately 75 different hospital and clinic visits. N.W.O. was also participating in both speech and physical therapy. N.W.O. continued to use Reglan during this time to combat his GERD symptoms.

---

(. . . continued)

reflux does not occur, but Dr. Nanton admitted there are possibilities of side effects. Appellants expert, Dr. John Sabow, testified at trial that the side effects can include tardive dyskinesia, which exhibit symptoms of irregular mouth movements, grimacing, twisting, and other involuntary, abnormal movements. Dr. Sabow also testified that side effects can include extrapyramidal dysfunction disorders manifesting themselves through convulsions and sudden stiffening.

[¶5.]     As a result of seeing a television commercial on the side effects of Reglan, Ms. McClure brought her concerns about Reglan's side effects to the attention of N.W.O.'s primary care physician. Dr. Nanton discussed N.W.O.'s Reglan regiment with N.W.O.'s primary physician and his attempts to wean N.W.O. off the drug. In March 2010, Dr. Nanton informed N.W.O.'s primary physician to stop N.W.O.'s use of Reglan because of Ms. McClure's concerns. Dr. Nanton had no further involvement in N.W.O.'s care after this exchange.

[¶6.]     On May 9, 2012, Appellants filed a complaint against Dr. Nanton alleging medical malpractice. Appellants claimed Dr. Nanton breached the standard of care by treating N.W.O. with Reglan and causing N.W.O. injury. A five-day jury trial commenced in Sioux Falls on June 13, 2016.

[¶7.]     During the jury trial, Appellants presented testimony from one expert, Dr. John Sabow, to opine on both the standard of care and legal causation. Dr. Sabow, a neurologist, testified that professional literature informs doctors to refrain from using Reglan in the very young due to its vast side effects. Dr. Sabow stated that Dr. Nanton breached the standard of care when he placed N.W.O. on Reglan. Because of N.W.O.'s extended Reglan use and improper monitoring, Dr. Sabow concluded that N.W.O. had been poisoned by Reglan. Dr. Sabow testified that as a result, N.W.O. acquired a neuropsychiatric organic brain dysfunction that caused N.W.O. to have cognitive thinking problems, motor function issues, and an induced Tourette's Syndrome.

[¶8.]     Dr. Nanton presented testimony from Dr. Warren Bishop, a fellow pediatric gastroenterologist, on the standard of care. Dr. Bishop testified that he

personally has used Reglan in adolescent patients and that Dr. Nanton's decision to use the drug was justified and appropriate. He further stated that Reglan's side effects were outweighed by its therapeutic benefits, especially in a case like N.W.O.'s. Dr. Bishop concluded that Dr. Nanton's treatment of N.W.O. met the standard of care throughout the time of N.W.O.'s Reglan use. On the causation issue, Dr. Bishop testified that Reglan did not cause N.W.O.'s problems. He stated he was unable to find any article linking Reglan use to a developmental disability or any article indicating Reglan use can cause Tourette's Syndrome.

[¶9.] Dr. Nanton also presented the testimony of three other experts on the issue of causation. First, Dr. Patrick Barnes, Medical Section Chief of Pediatric Neuroradiology at Stanford, testified through a videotaped deposition about N.W.O.'s pre-Reglan brain imaging. From an ultrasound of N.W.O.'s brain taken on his first day of life, Dr. Barnes concluded that N.W.O.'s right and left cerebral hemispheres were asymmetric, which indicated N.W.O. had an underdeveloped brain. Dr. Barnes confirmed these findings by an MRI taken of N.W.O.'s brain on his second day of life. Dr. Barnes concluded that N.W.O.'s brain was underdeveloped early in the pregnancy and caused N.W.O.'s developmental problems.

[¶10.] Expanding on Dr. Barnes' testimony, Dr. Bradley Schaeffer testified by videotaped trial deposition. Dr. Schaeffer is the Founding Director for the Division of Medical Genetics at the University of Arkansas. He testified that N.W.O.'s MRI showed an abnormal brain at birth and this abnormality is what caused N.W.O.'s

developmental delays. Dr. Schaeffer concluded that N.W.O.'s problems were not caused by Reglan but were present from birth.

[¶11.]     Lastly, Dr. Nanton called Dr. Donald Chadwick, a pediatric neurologist. Using N.W.O.'s brain MRI, Dr. Chadwick testified in person that N.W.O. had an abnormal brain at birth, which is consistent with N.W.O.'s exhibited developmental delays. After personally examining N.W.O. and his medical records, Dr. Chadwick concluded that Reglan did not cause N.W.O.'s developmental delays.

[¶12.]     At the close of Dr. Nanton's case-in-chief, Appellants attempted to present rebuttal testimony from Dr. Sabow to refute the MRI images discussed by Dr. Nanton's experts that described N.W.O.'s abnormal brain at birth. Dr. Nanton objected because Dr. Sabow's opinion was untimely disclosed and would be prejudicial. Appellants argued that they were unaware the MRI was going to be used as a basis for Dr. Nanton's experts' opinions; Dr. Sabow was present during Dr. Chadwick's testimony and should be allowed to rebut the opinions as to what N.W.O.'s MRI depicts; and Dr. Sabow's rebuttal testimony was not required to be disclosed.

[¶13.]     The circuit court excluded Appellants' rebuttal expert testimony because Dr. Sabow's opinion as to the MRI images was new and undisclosed; the Appellants knew the topic would be part of the trial; and the potential for prejudice against Dr. Nanton favored exclusion.

[¶14.]     In settling jury instructions, Appellants also requested a nonapportionment-of-damages jury instruction. The instruction provided that Appellants could recover if the jury found Reglan aggravated N.W.O.'s pre-existing

condition. The circuit court stated that the Appellants had argued throughout the trial that N.W.O. was a healthy baby at birth and Reglan was the cause of N.W.O.'s developmental problems, while Dr. Nanton's entire defense was based on the opposite rationale. Thus, the circuit court refused to give the instruction to the jury because there was no evidence in the record to support it.

[¶15.] Following deliberation, the jury returned a verdict in favor of Dr. Nanton on June 17, 2016. The jury concluded via a special verdict form that Dr. Nanton was not negligent.

[¶16.] The Appellants appeal, raising two issues:

1. Whether the circuit court erred in excluding Appellants' expert's undisclosed rebuttal testimony.

2. Whether the circuit court erred in refusing Appellants' requested jury instruction.

**Standard of Review**

[¶17.] A "circuit court has discretion in admitting or excluding expert testimony, and therefore, we review a court's evidentiary ruling on expert testimony for an abuse of discretion." *Thompson v. Avera Queen of Peace Hosp.*, 2013 S.D. 8, ¶ 7 n.1, 827 N.W.2d 570, 573 n.1. "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Kaiser v. Univ. Physicians Clinic*, 2006 S.D. 95, ¶ 29, 724 N.W.2d 186, 194 (quoting *State v. Henry*, 1996 S.D. 108, ¶ 10, 554 N.W.2d 472, 473). "Not only must this Court find that the [circuit] court abused its discretion . . . , but it must find that the jury's consideration of the erroneously excluded evidence might and probably would have resulted in a different finding by the jury in order to warrant a

reversal of the [circuit] court." *Schrader v. Tjarks*, 522 N.W.2d 205, 209-10 (S.D. 1994).

[¶18.] Likewise, "we generally review a [circuit] court's decision to grant or deny a particular [jury] instruction under the abuse of discretion standard." *Papke v. Harbert*, 2007 S.D. 87, ¶ 13, 738 N.W.2d 510, 515. Further, we have stated:

> [N]o court has discretion to give incorrect, misleading, conflicting, or confusing instructions: to do so constitutes reversible error if it is shown not only that the instructions were erroneous, but also that they were prejudicial. Erroneous instructions are prejudicial under SDCL 15-6-61 when in all probability they produced some effect upon the verdict and were harmful to the substantial rights of a party. Accordingly, when the question is whether a jury was properly instructed overall, that issue becomes a question of law reviewable de novo.

*Id.* (citations omitted) (quoting *Vetter v. Cam Wal Elec. Coop., Inc.*, 2006 S.D. 21, ¶ 10, 711 N.W.2d 612, 615).

## Analysis and Decision

[¶19.] *1. Whether the circuit court erred in excluding Appellants' expert's undisclosed rebuttal testimony.*

[¶20.] Appellants first contend that the circuit court abused its discretion in excluding Dr. Sabow's rebuttal testimony offered in response to Dr. Chadwick's interpretation of N.W.O.'s brain images as showing an abnormal brain at birth.[2] Appellants argue that they were not required to disclose Dr. Sabow's rebuttal testimony because the pretrial scheduling order that included a deadline for expert witness disclosure did not mention rebuttal witnesses specifically, and the

---

2. Appellants also contend that Dr. Sabow's rebuttal testimony was offered in response to Dr. Nanton raising an affirmative defense; however, the record is absent any indication an affirmative defense was raised other than Dr. Nanton's original statute of limitations defense, which was not argued at trial.

disclosure of rebuttal witnesses is not required in South Dakota. *See Sorensen v. Harbor Bar, LLC*, 2015 S.D. 88, ¶ 31, 871 N.W.2d 851, 857 ("Disclosure of rebuttal witnesses has never been required in South Dakota by statute, rule, or caselaw."). Without clarifying further, Appellants stated in their brief that the erroneous exclusion of Dr. Sabow's rebuttal testimony was prejudicial and "must have influenced the jury's deliberations" because it went to a central issue to their case.

[¶21.]     "[O]ur review requires a two-step process; first, to determine whether the trial court abused its discretion in making an evidentiary ruling; and second, whether this error was a prejudicial error that 'in all probability' affected the jury's conclusion." *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 59, 764 N.W.2d 474, 491. Even assuming, without deciding error occurred, that the circuit court abused its discretion in excluding Dr. Sabow's rebuttal testimony, we find such an error harmless.

[¶22.]     Appellants argue that Dr. Sabow would have contrasted Dr. Chadwick's interpretation of N.W.O.'s MRI by stating that the image showed N.W.O. had a normal brain at birth and that his developmental delays were caused by Reglan.[3] Dr. Sabow's testimony, if believed, would go to causation; but the jury

---

3.     While Appellants suggest Dr. Sabow was called to rebut the testimony of Dr. Chadwick, the record is suspect of an inadequate offer of proof on what Dr. Sabow would testify to. *See Thomson v. Mehlhaff*, 2005 S.D. 69, ¶ 21, 698 N.W.2d 512, 520 ("[T]he proponent of excluded evidence must also attempt to offer the excluded evidence at trial and make an offer of proof."); *see also Wilcox v. Vermeulen*, 2010 S.D. 29, ¶ 20, 781 N.W.2d 464, 471 (failure to make an offer of proof on excluded testimony precludes review of the issue); SDCL 19-19-103(a)(2). During trial, Appellants' counsel stated that Dr. Sabow was going to rebut the conclusions made by Dr. Nanton's experts from the MRI images. Other than what Appellants suggested in their brief to this

(continued . . .)

did not reach the issue of causation. In a special verdict form, the jury was told to answer certain questions. The first question required the jury to answer "YES" or "NO" in response to: "Do you find that the Defendant Dr. Steven Nanton was negligent?" Relevant to that question, Instruction 22 informed the jury:

> A specialist in a particular field of medicine has the duty to possess that degree of knowledge and skill ordinarily possessed by physicians of good standing engaged in the same field of specialization in the United States.
>
> A specialist also has the duty to use that care and skill ordinarily exercised under similar circumstances by physicians in good standing engaged in the same field of specialization in the United States and to be diligent in an effort to accomplish the purpose for which the physician is employed.
>
> A failure to perform any such duty is negligence.

Additionally, Instruction 24 informed the jury:

> In determining whether Dr. Nanton was negligent in selection of his method of treatment, you should consider the judgment in light of all the attendant circumstances at the time he acted. You should not judge Dr. Nanton by after-acquired knowledge or by the results of the treatment. In view of all the facts and the

---

(. . . continued)

Court, we still do not know the exact opinions Dr. Sabow holds as to N.W.O.'s MRI images or his conclusions based on them. However, the substance of Dr. Sabow's proposed testimony was apparent from the context—in that he believed N.W.O.'s brain was normal at birth—even though a formal offer of proof was not provided. *See* SDCL 19-19-103(a)(2); *see also State v. Ralios*, 2010 S.D. 43, ¶ 53 n.5, 783 N.W.2d 647, 661 n.5 (stating that the sufficiency of an offer of proof before the trial court should be left to its discretion). Probably the least favored methods for an offer of proof is one of testimony by counsel because it carries the risk of failing to meet the standards of a good offer of proof—specificity and detail. *United States v. Adams*, 271 F.3d 1236, 1242 (10th Cir. 2001); *see* 75 Am. Jur. 2d Trial § 372, Westlaw (database updated November 2017) (certainty and detail are needed in narrative offers of proof by counsel because there is a great risk that the court will find it insufficient).

> state of knowledge of the profession at the time Dr. Nanton acted, the proper test is whether the treatment employed was in conformity with the accepted standards of skill and care at that time.

The jury checked "NO" on the special verdict form, finding that Appellants did not prove Dr. Nanton was negligent.

[¶23.] An action in negligence generally requires a plaintiff to prove "duty, breach of that duty, proximate and factual causation, and actual injury." *Hamilton v. Sommers*, 2014 S.D. 76, ¶ 21, 855 N.W.2d 855, 861 (quoting *Bernie v. Catholic Diocese of Sioux Falls*, 2012 S.D. 63, ¶ 15, 821 N.W.2d 232, 240). Here, because the jury answered "NO" in response to the question whether Dr. Nanton was negligent, the jury was not required to decide the next questions on the special verdict form related to causation and damages. The question on causation required the jury to answer "YES" or "NO" to: "Do you find that Dr. Nanton's negligence was the legal cause of the Plaintiffs' injuries or damages?" The third question required the jury to "[s]et forth the amount of damages [it finds] to be legally caused by Dr. Nanton's negligent conduct[.]" Because Dr. Sabow's rebuttal testimony went to the issue of causation and not Dr. Nanton's duty or breach of that duty, and the jury did not reach the issue of causation, Appellants have failed to establish "the jury might and probably would have returned a different verdict if the alleged error had not occurred." *Supreme Pork, Inc.*, 2009 S.D. 20, ¶ 58, 764 N.W.2d at 491 (quoting *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107, 113 (S.D. 1993)).

[¶24.] **2.** ***Whether the circuit court erred in refusing Appellants' requested jury instruction.***

[¶25.] The Appellants argue the circuit committed reversible error when it refused to give the jury a nonapportionment-of-damages instruction. The requested instruction stated:

> If you find that the Plaintiffs are entitled to recover for an aggravation of a pre-existing injury, but you cannot logically, reasonably or practically apportion Plaintiffs' present and future injuries between the injury caused by the pre-existing injury and the aggravation caused by the Defendants' conduct, then you may award damages for all present and future injuries caused by both the pre-existing injury and Defendants' conduct.

The Appellants state that the circuit court deprived the jury of the opportunity to conclude that N.W.O. had a pre-existing condition and that Reglan aggravated this condition.[4]

[¶26.] "To establish reversible error from a [circuit] court's refusal to give a requested instruction, the party asserting error must show that (1) the tendered instruction was a correct statement of the law, (2) the instruction was warranted by the evidence, and (3) the error in not giving the instruction was prejudicial." *State v. Engesser*, 2003 S.D. 47, ¶ 43, 661 N.W.2d 739, 753. Here, although Appellant's requested instruction was a correct statement of the law, it was not warranted by the evidence.

---

4.  Appellants also argue the prejudice created by the exclusion of Dr. Sabow's rebuttal testimony was compounded by the circuit court's refusal to provide the jury with a nonapportionment-of-damages instruction. However, these arguments are mutually exclusive. Dr. Sabow's alleged testimony of N.W.O.'s MRI depicting a normal brain at birth would run counter to an argument that N.W.O. had a pre-existing condition that Reglan aggravated.

[¶27.]     Appellants' requested nonapportionment-of-damages jury instruction applies where evidence of a pre-existing injury is aggravated. "[A circuit] court is not required to instruct on matters that find no support in the evidence." *State v. Carter*, 2009 S.D. 65, ¶ 54, 771 N.W.2d 329, 344 (quoting *State v. Mulligan*, 2007 S.D. 67, ¶ 43, 736 N.W.2d 808, 822). Thus, the circuit court stated, and we agree, that the record is absent any expert opinion that N.W.O.'s developmental delays were aggravated by his Reglan use. Appellants' expert, Dr. Sabow, instead argued throughout trial that N.W.O. was healthy at birth and that he had since acquired a neuropsychiatric organic brain dysfunction caused by Reglan. In contrast, Dr. Nanton presented evidence that N.W.O. had developmental delays from birth and that Reglan did not cause N.W.O.'s issues. Because the instruction was not warranted by the evidence, the circuit court did not abuse its discretion when it refused it.

[¶28.]     Because the circuit court did not err in excluding Appellants' undisclosed expert's rebuttal testimony and in refusing Appellants' requested jury instruction, we affirm.

[¶29.]     ZINTER and SEVERSON, Justices, and WILBUR, Retired Justice, and STRAWN, Circuit Court Judge, concur.

[¶30.]     STRAWN, Circuit Court Judge, sitting for KERN, Justice, disqualified.

[¶31.]     JENSEN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.